## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DARRELL TROTTER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 12-1311-RGA |
| | : | |
| CORRECT CARE SOLUTIONS, et al., | : | |
| | : | |
| Defendants. | : | |

Darrell Trotter, James T. Vaughn Correctional Center, Smyrna, Delaware; Pro Se Plaintiff.

Daniel A. Griffith, Esquire, Whiteford, Taylor & Preston, LLC, Wilmington, Delaware; Counsel for Defendant Correct Care Solutions, LLC.

Jason Avellino, Esquire, Naulty Scaricamazza & McDevitt, LLC, Philadelpha, Pennsylvania; Counsel for Defendant Dr. Sam Nwogu.

## **MEMORANDUM OPINION**

December 19, 2013
Wilmington, Delaware

*Richard G. Andrews*
**ANDREWS, U.S. District Judge:**

Plaintiff Darrell Trotter, an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware, appears *pro se* and has been granted leave to proceed *in forma pauperis*. Plaintiff alleges violations of his constitutional rights pursuant to 42 U.S.C. § 1983. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Before the Court are Defendants' motions to dismiss and/or for summary judgment (D.I. 24, 25) and Plaintiff's motion for summary judgment (D.I. 43).

The Complaint alleges that Plaintiff was seen by Defendant Dr. Sam Nwogu on March 14, 2012, four to five weeks after Plaintiff had submitted numerous sick call slips for the treatment of a swollen face and inflamed gums. The Complaint alleges that Defendant Correct Care Solutions LLC was aware of Plaintiff's requests, but its procedures and failure to train personnel resulted in the delay of care.

Dental records indicate that Plaintiff's teeth were cleaned on February 23, 2012, and he was seen on March 2, 2012, with a follow-up scheduled for extractions and fillings. (D.I. 32, ex. 4.) When Plaintiff was seen by Dr. Nwogu on March 14, 2012, he conducted an oral and maxillofacial surgical evaluation of Plaintiff. Upon examination Plaintiff was negative for TMJ,[1] trismus,[2] and facial edema. (*Id.*) Dr. Nwogu recommended the extraction of Plaintiff's teeth Nos. 1, 11, 17, 31, and 32, and informed Plaintiff that it was likely that teeth Nos. 9 and 10 would require extraction in the future. (*Id.*) Plaintiff signed a consent form for the extraction of teeth Nos. 1, 11, 17, 31, and

---

[1]Temporomandibular joint syndrome. *The American Heritage Stedman's Medical Dictionary* 827 (2d ed. 2004).

[2]A firm closing of the jaw due to tonic spasm of the muscles of mastication from disease of the motor branch of the trigeminal nerve. *Id.* at 843.

32, and they were extracted. (D.I. 32, ex. 5.) The consent form informed Plaintiff of the various risks associated with tooth extraction including infection that could require antibiotics and/or minor surgery to resolve. (*Id.*) Plaintiff was diagnosed with class I mobility[3] in teeth Nos. 9, 10; retained root tips[4] at Nos. 11, 31, and 32; and caries[5] in teeth Nos. 1 and 17. (*Id.* at ex. 4)

Plaintiff presented for a follow-up visit on March 23, 2012, complaining that he could not open his mouth. (*Id.* at ex. 4.) There was slight swelling on the lower right jaw, and Plaintiff was referred to medical for pain. (*Id.*) On March 24, 2012, an R.N. filled out a CCS staff referral form marked urgent for Plaintiff to see a dentist. (D.I. 44.) On March 25, 2012, a nurse completed a CCS dental pain form that indicated Plaintiff had constant pain, could not open his mouth, and had mild swelling. (*Id.*) When Plaintiff was seen by Dr. Nwogu on March 27, 2012, he was diagnosed with right masseteric space cellulitis (*i.e.*, an infection). (D.I. 32, ex. 6.) Dr. Nwogu referred Plaintiff to the prison infirmary for treatment. (D.I. 32, ex. 6; D.I. 44.) The next day, Dr. Nwogu examined Plaintiff and recommended transport to an outside hospital for a CT scan of the face with contrast and surgical intervention. (*Id.*)

Plaintiff was transported to the Kent General Hospital on March 28, 2012, and diagnosed with right masseteric space infection. (D.I. 26, ex. 3) On March 29, 2012,

---

[3]Mobility is an indicator of bone loss around the tooth. *See* http://www. dentalcare. com.

[4]Even with solid techniques and procedures, teeth can fracture during routine extractions, leaving small roots in their sockets. *See id.* at n.1.

[5]Caries is the decay of a bone or tooth, especially dental caries. *The American Heritage Stedman's Medical Dictionary* at 129.

2

he underwent an incision and drainage of the right masseteric space via extraoral and intraoral incisions. (*Id.*) Plaintiff was discharged in early April. (*Id.*) Upon release from the hospital, Plaintiff was transferred to the prison infirmary where he received dental and medical follow-up care with the follow-up care continuing subsequent to his discharge from the infirmary on April 19, 2012. (D.I. 26, 27, 28, 30, and 31 exs. 3; D.I. 32, ex. 6.)

CCS moves to dismiss the complaint (D.I. 24) pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that it was not the dental care provider during the relevant time period. Dr. Nwogu moves to dismiss or, in the alternative, for summary judgment on the grounds that he did not violate Plaintiff's constitutional rights. Plaintiff filed a cross-motion for summary judgment on the grounds that Dr. Nwogu was deliberately indifferent to a serious dental need and that CCS is responsible, in part, for Dr. Nwogu's acts.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

3

If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Matsushita*, 475 U.S. at 587. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. *Anderson*, 477 U.S. at 249. Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104.

Serious medical needs are those that have been diagnosed by a physician as requiring treatment or are so obvious that a lay person would recognize the necessity for medical attention, and those conditions which, if untreated, would result in a lifelong handicap or permanent loss. *See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834

4

F.2d 326, 347 (3d Cir. 1987). Deliberate indifference requires more than mere negligence or lack of due care. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To demonstrate deliberate indifference, the plaintiff must demonstrate that the defendant was "subjectively aware of the risk" of harm to the plaintiff. *See Farmer*, 511 U.S. at 828. The plaintiff must allege acts or omissions that are sufficiently harmful to offend "evolving standards of decency." *Estelle v. Gamble*, 429 U.S. at 106. "Mere medical malpractice cannot give rise to a violation of the Eighth Amendment." *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990). In addition, an inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Id.* at 107.

The Complaint alleges that when Dr. Nwogu performed dental surgery, he failed to administer proper treatment and failed to take appropriate measures to cure the spread of infection. In his motion for summary judgment, Plaintiff argues that Dr. Nwogu and his assistant made a professional decision to recommend a dangerous procedure in violation of Plaintiff's constitutional rights. Dr. Nwogu argues that he did not violate Plaintiff's constitutional rights.

The record demonstrates that Plaintiff was provided with dental care throughout the period at issue. Dental records indicate that there was no infection when Dr. Nwogu examined Plaintiff on March 14, 2012. Plaintiff argues that Dr. Nwogu's dental notes indicating there was no infection are "not reliable" but, other than argument, he provides

5

no evidence to support his position. While Plaintiff now disagrees with the actions taken by Dr. Nwogu on March 14th, the record indicates that, at the time of the extractions, Plaintiff was informed that an infection was a possibility. Moreover, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

Following the extractions, Plaintiff was seen by other dental providers. When he was again seen by Dr. Nwogu on March 27, 2012, examination revealed an infection and Dr. Nwogu transferred Plaintiff to the infirmary for treatment. The next day, Dr. Nwogu sought to have Plaintiff transferred to a local hospital for treatment.

The record indicates that Plaintiff received continual dental care. The record does not support a finding that Dr. Nwogu was deliberately indifferent to Plaintiff's dental needs or that he violated Plaintiff's constitutional rights. Instead, it indicates that he took steps to see that Plaintiff received adequate dental care. Based upon the evidence of record, no reasonable jury could find for Plaintiff. Therefore, the Court will grant Dr. Nwogu's motion for summary judgment and will deny Plaintiff's motion for summary judgment as to Dr. Nwogu.

With regard to CCS, it argues that Plaintiff named the wrong dental provider and, therefore, it should be dismissed as a defendant.[6] Plaintiff moves for summary judgment on the grounds that CCS is partly responsible for the actions of Dr. Nwogu and his assistant. When a plaintiff relies upon a theory of respondeat superior to hold a

---

[6]Although an affidavit states that CCS was not the dental service provider in March 2012 (*see* D.I. 24, ex. B), the record contains CCS dental pain and dental treatment referral forms. The CCS logo is on the forms and the forms were used during the relevant time-period (*i.e.*, March 2012).

6

corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989). In order to establish that CCS is directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [CCS] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

Because the Court has concluded that there is no evidence that Dr. Nwogu violated Plaintiff's constitutional rights under the Eighth Amendment, CCS cannot be liable based on the theory that it established or maintained an unconstitutional policy or custom responsible for violating Plaintiff's rights. *See Goodrich v. Clinton Cnty. Prison*, 214 F. App'x 105, 113 (3d Cir. 2007) (policy makers not liable in prison medical staff's alleged deliberate indifference to prisoner's serious medical needs, where, given that there was no underlying violation of prisoner's rights, policy makers did not establish or maintain an unconstitutional policy or custom responsible for violating prisoner's rights). In light of the foregoing, the Court will grant CCS' motion to dismiss and will deny Plaintiff's motion for summary judgment as to CCS.

Based upon the evidence of record, no reasonable jury could find for Plaintiff on any of his claims. For the above reasons, the Court will grant Defendants' motions and will deny Plaintiff's motion.

An appropriate order will be entered.

7